# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**DAVID CZAPIEWSKI**,
      **Plaintiff**,

v.                                                                                         Case No. 16-C-1709

**ZACHARY PINGEL, et al.**,
      **Defendants**.

_____

## DECISION AND ORDER

Plaintiff David Czapiewski, who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. I allowed him to proceed on claims that: (1) defendants Zachary Pingel, Brian Bantleon, Richard Zimkiewicz, and Theodore Stern were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they failed to help him after he expressed thoughts of self-harm; (2) Pingel issued plaintiff a conduct report in violation of the First Amendment; and (3) Pingel failed to place plaintiff in observation status in violation of the Equal Protection Clause of the Fourteenth Amendment. Before me now are the parties' cross-motions for summary judgment.

## I. BACKGROUND[1]

At the relevant time, plaintiff was an inmate housed at the Wisconsin Resource Center (WRC), and defendants were employed at WRC. Pingel was a psychiatric care technician (PCT), Zimkiewicz was a psychiatric care supervisor, Stern was a captain, and Bantleon was the security director.

---

[1] The facts are taken from "Defendants' Response to Plaintiff's Proposed Findings of Fact" (Docket No. 58) and "Defendants' Reply to Plaintiff's Response to Defendants' Proposed Findings of Fact" (Docket No. 84). The facts are undisputed unless otherwise indicated.

On November 12, 2015, plaintiff, who is 6'5" and about 290 pounds, approached the desk were Pingel and two other PCTs were stationed. According to plaintiff, he said, "I am having thoughts of harming myself and staff and want to be removed from the unit and placed on 'Observations Status.'" Docket No. 84 at ¶ 4; Docket No. 58 at ¶ 1. Plaintiff explains that, on a number of occasions while incarcerated, he has expressed thoughts of self-harm and has been placed in observations status.

One of the PCTs, who is not a defendant, reported to Zimkiewicz that plaintiff had stood over the staff desk and made threats about wanting to hurt them because of an incident involving a television set. Staff reported to Zimkiewicz that plaintiff's behavior and comments were intimidating and threatening.

Zimkiewicz talked to plaintiff to figure out what was going on. During the conversation, plaintiff was adamant that he was not actually going to hurt himself; he had only thought about it, like a memory. Plaintiff insisted that he could think about whatever he wanted and that thoughts are not crimes. Zimkiewicz agreed that thoughts are not crimes and asked plaintiff to confirm that he did not have an intent to hurt himself. Plaintiff confirmed he was not going to hurt himself. He then started talking about his television. According to Zimkiewicz, plaintiff's behavior escalated when he asked him about his threats to staff. He does not explain what he means by "escalated," and plaintiff denies that his behavior escalated.

Following this conversation, Zimkiewicz decided to place plaintiff in temporary lock-up (TLU) pending an investigation into plaintiff's statements and demeanor and pending a conduct report he intended to issue plaintiff for threatening staff. Zimkiewicz

2

explains that he did what he thought was best in order to ensure the safety of the inmates and staff and to prevent plaintiff's behavior from escalating later in the shift.

Plaintiff was escorted to TLU, which is a non-punitive status. Inmates believed to have committed a major rule violation are generally placed in TLU pending an investigation. Zimkiewicz spoke to plaintiff before and throughout plaintiff's movement to TLU, and plaintiff expressed no interest in observation status and repeatedly stated that he did not have any intent to harm himself.

Plaintiff was upset about being moved to TLU because he did not think his comments were threatening to either himself or to staff; he insisted that he had only thought about it. Zimkiewicz told plaintiff that telling staff about his ideas of hurting them while towering over their desk because he could not get his television set was perceived by the staff as threating. He informed plaintiff he was going to TLU pending a conduct report for making threats. Plaintiff was issued a notice of placement in TLU, which allowed plaintiff the opportunity to write a statement. In his statement, plaintiff admitted that he told staff he was having thoughts of harming PCTs. Bantleon reviewed and approved plaintiff's TLU placement pending review by the treatment team of plaintiff's thoughts/threats.

In TLU, staff perform welfare checks on the inmates every fifteen minutes, just as they would for an inmate on clinical observation. Defendants explain that placing plaintiff in TLU allowed them to adequately monitor his behavior, safety, and well-being, to provide a safer working environment for staff, and to temporarily limit plaintiff's access to property that he might have used to harm himself or others. Plaintiff insists that

placing him in TLU without allowing him to talk to the on-call crisis psychological staff exacerbated his mental health crisis.

Plaintiff asserts that because of his mental health crisis, he attempted suicide by jumping head-first off of his sink. He states that he was knocked unconscious for several minutes and that he continues to experience back pain and migraines. Defendants point out that there is no documentation indicating that plaintiff engaged in self-harming behaviors while he was in TLU. PCT notes indicate that plaintiff acted appropriately, made his needs known, took his medication, and slept most of the shift. Plaintiff points to a health services request that he wrote nearly a year and a half later, on April 12, 2017, wherein he complained about headaches he was suffering as a result of diving off of his sink on November 12, 2015.

Plaintiff was returned to the general population the next day, on November 13, 2015. Pingel, at the direction of Zimkiewicz, issued plaintiff a disciplinary conduct report for threats based on his comments to staff that he was thinking of harming them.

Bantelon approved the conduct report on November 13, 2015, and Stern approved the conduct report on November 16, 2015. Stern designated the report as a major rule violation and determined that it should be proceed to full due process hearing. A full due process hearing was held on November 23, 2015. The hearing officer (who is not a defendant) dismissed the conduct report and plaintiff received no sanction or reprimand.

## II. ANALYSIS

*A. Summary Judgment Standard*

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding the parties' cross-motions, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

*B. Deliberate Indifference*

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate-indifference claim, a plaintiff must first show that he has "a medical condition 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Edwards v. Snyder*, 478 F.3d 827, 830–31(7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

A plaintiff must show "that the prison official[s] knew of 'a substantial risk of harm to [him] and disregarded the risk.'" *Id.* at 831 (first quoting *Greeno*, 414 F.3d at 653; and then citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In other words, the prison

official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . Moreover, a supervisor cannot be held liable in a § 1983 action unless the individual was personally involved in the wrongful conduct such that he or she caused or participated in the alleged violation." *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002).

Defendants are entitled to summary judgment on plaintiff's deliberate indifference claim because they were not aware of the risk plaintiff posed to himself. Plaintiff asserts that he told the PCTs that he was thinking of hurting himself and others. They related that assertion to Zimkiewicz, who then interviewed plaintiff to better understand plaintiff's statements. During that conversation, plaintiff was adamant that he was not going to hurt himself. Docket No. 84, ¶ 9. Further, after Zimkiewicz decided to place plaintiff in TLU, plaintiff again confirmed to Zimkiewicz that was not planning to hurt himself or others. *Id.* at ¶ 19-20. That is the last contact any of the defendants had with plaintiff prior to him allegedly diving off of his sink. Given that plaintiff had repeatedly confirmed that he had no intention of hurting himself, none of the defendants had any reason to suspect that plaintiff posed a risk to himself. Defendants cannot have been deliberately indifferent to a risk they did not know about.

### C. Retaliation

Pingel is entitled to summary judgment on plaintiff's claim that Pingel retaliated against him when he wrote plaintiff a conduct report in response to plaintiff expressing thoughts of harming himself and staff. The First Amendment prohibits retaliatory actions by government officials against individuals who are exercising their constitutional rights. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). "To make out a prima facie

case on summary judgment, the plaintiff[] must show that: (1) [he] engaged in activity protected by the First Amendment; (2) [he] suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the [prison official's] decision." *Id.*

Plaintiff fails to make a prima facie case of retaliation because he fails to show that he engaged in protected activity. Plaintiff does not dispute that he approached the PCTs' desk and told them that he was having thoughts of hurting staff. Plaintiff is 6'5" and almost three hundred pounds. The PCTs at the desk assert that they felt threatened by plaintiff's demeanor and words because he made the statement shortly after a confrontation with them about his television set. They reported plaintiff's statement to Zimkiewicz, who spoke with plaintiff to better understand the situation. During that conversation plaintiff repeatedly insisted that he had no intention of hurting himself or staff. With a fuller understanding of the circumstances in which plaintiff made his statements, Zimkiewicz directed Pingel to write a conduct report. Zimkiewicz believed that plaintiff was not trying to request help, but was instead trying to intimidate and threaten staff under the guise of requesting help.

Courts "must accord substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Here, Zimikiewicz believed plaintiff was using a request for help as a way to threaten staff. Threats are not protected speech under the First Amendment. *United States v. Parr*, 545 F.3d 491, 496-97 (7th Cir. 2008) ("the First Amendment does not preclude restrictions on certain categories of speech having little or no social value, and threats are one such category"). Plaintiff presents no evidence to call into question Zimkiewicz's interpretation

7

of plaintiff's statements, and, in light of the record, I find that interpretation to be reasonable.

In short, because plaintiff presents no evidence to support a conclusion that he engaged in protected activity, plaintiff fails to make a prima facie case for retaliation and defendants are entitled to summary judgment on this claim.

*D. Class of One*

"An equal-protection claim brought by a 'class-of-one' can succeed only if the plaintiff proves that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the different treatment." *Jordan v. Cockroft*, 490 Fed.Appx.813, 815 (7th Cir. 2012) (citing *Enquist v. Dep't of Agric.,* 553 U.S. 591, 601 (2008)) (other citations omitted). As I already noted, plaintiff fails to rebut defendants' assertion that plaintiff was given a conduct report because Zimkiewicz believed plaintiff was using his request for help as a way to threaten staff. Because defendants offer a rational basis for the decision to treat plaintiff differently from other inmates who expressed thoughts of hurting themselves or others, plaintiff's class-of-one claim fails.

## ORDER

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment (Docket No. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket No. 55) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 27th day of June, 2018.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge